# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of JOHN IRVING LETT.

CRAIG LETT, Personal Representative,

      Appellee,

v

NANCY HENSON, f/k/a, NANCY FOOTE,

      Appellant.

FOR PUBLICATION
March 17, 2016
9:00 a.m.

No. 326657
Kent Probate Court
LC No. 14-196021-DE

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Appellant Nancy Henson (Nancy) is the former spouse of the decedent, John Lett (John). At issue in this case is Nancy's right to collect $120,000 as John's sole named beneficiary of a group life insurance policy provided as a benefit by John's employer, Kent County. Appellee Craig Lett (Craig) was appointed personal representative of John's estate and filed a petition in the probate court praying that the proceeds of John's life insurance be paid to his estate. After denying Nancy's motion for summary disposition, the probate court conducted a trial, found in favor of Craig's petition, and entered an order on March 9, 2015, effectively voiding Nancy's interest in the insurance proceeds "pursuant to MCL 552.101 and in light of the specific waiver language in the Judgment of Divorce" that ended John and Nancy's marriage. For the reasons discussed below, we vacate the probate court's order of March 9, 2015, and remand for entry of an order dismissing the petition and granting Nancy summary disposition.

## I. SUMMARY OF FACTS AND PROCEEDINGS

During their marriage John had designated Nancy as his sole named beneficiary on his employer-provided life insurance policy. John and Nancy were granted a divorce by a judgment entered on August 24, 2009 in Barry County Circuit Court. Consistent with MCL 552.101, requiring the trial court to determine the rights of each spouse to any contract of life insurance on the life of the other spouse, the judgment provided:

**IT IS FURTHER ORDERED AND ADJUDGED** that all interest of either party hereto, in and to the proceeds of any policy or contract of Life Insurance upon the life of the other, through any employer or otherwise, is hereby canceled.

The judgment divided the marital property by simply assigning to each spouse the property they possessed. The judgment further assigned the couple's smaller debts to John. The one large debt, a home equity line of credit (HELOC) in the amount of $57,000—secured by real property owned and acquired by Nancy before the marriage—was divided equally with each party responsible for paying $28,500. The judgment required John to pay Nancy his share of the HELOC in monthly installments of $1,100, starting 30 days after entry of the judgment. The judgment also required John to maintain a policy of life insurance of not less than $28,500 with Nancy as the beneficiary. The following provision appears in the judgment immediately following the provision for cancellation of each spouse's interest in any existing life insurance:

**IT IS FURTHER ORDERED AND ADJUDGED** that the Defendant shall name the Plaintiff as the beneficiary on a separate life insurance policy, the name and policy number of which must be provided to the Plaintiff within 60 days of the entry of this Judgment, in an amount not less than $28,500.00 until the obligation of the Defendant under the Debts paragraph of this Judgment is satisfied in full.

It is undisputed that John never purchased a separate life insurance policy to secure his obligation to Nancy for one-half of the HELOC. Nancy testified that she never initiated enforcement action regarding this provision. When John initially failed to make his payments on the HELOC as required by the judgment of divorce, Nancy initiated contempt proceedings in Barry County Circuit Court by filing a petition on February 8, 2010. John commenced making payments on his HELOC obligation at some point in April 2010. A transcript of a contempt sentencing hearing held in Barry Circuit Court on April 29, 2010 shows that Nancy's attorney, C. Marcel Stoetzel, informed the trial court that John was then current in his obligations under the judgment of divorce. The trial court stated it would dismiss the contempt citation:

At this point I will dismiss the contempt citation and the—just remind everybody that the judgment of divorce remains in full force and effect. If there other—are other terms that need to be fulfilled they do need to be fulfilled otherwise there is the potential for contempt—or further contempt citations. . . . [TR, 04/29/2010, pp 3-4 (Barry Circuit Court Docket No. 08-327-DO).]

On September 7, 2005, after his marriage to Nancy, John named her as his beneficiary to a life insurance policy he had through Kent County, his employer. After the divorce, on November 5, 2009, John removed Nancy as his beneficiary of any employer-provided benefits. But, on April 6, 2010, contemporaneous with the contempt proceedings, John signed a Kent County Life Insurance Beneficiary Form naming Nancy as the "100%" beneficiary of the basic benefit and also of any supplemental benefit of the group basic life and accidental death and indemnity policy. John paid off his HELOC obligation in July 2012. He did not, however, change his beneficiary designation before he died on July 27, 2014.

Craig Lett was appointed personal representative of John's estate. On September 3, 2014, Craig filed a petition in the probate court praying that the proceeds of John's life insurance be paid to his estate. Craig asserted his belief that John only added Nancy as his beneficiary because of his obligation under the divorce judgment and the contemporaneous contempt proceedings. Craig also asserted his belief that John did not intend Nancy to benefit from his life insurance once John had satisfied his divorce obligations and that it would be unjust for Nancy "to receive an additional windfall of $120,000 just because [John] failed to change his beneficiary designation" after the debt was satisfied. Craig contended that if Nancy received the insurance payment it would be "fraudulent or wrongful retention of the policy proceeds because of her execution of a waiver . . . except as to her security for payment" of John's debt, citing *Moore v Moore*, 266 Mich App 96; 700 NW2d 414 (2005), and *MacInnes v MacInnes*, 260 Mich App 280; 677 NW2d 889 (2004). Craig further alleged John's April 6, 2010 beneficiary designation was void pursuant to the judgment of divorce and MCL 552.101.

After discovery by interrogatories and requests for admissions, Nancy moved on January 5, 2015 for summary disposition under MCR 2.116(C)(8) and (10). Nancy asserted that at best, Craig's petition alleged John forgot to change his beneficiary designation after satisfying his divorce obligation, but Craig had produced no evidence that John intended someone other than Nancy as his beneficiary. And, Nancy asserted, because Craig had not alleged or produced any evidence of fraud or mutual mistake of fact, the life insurance policy could not be reformed. See *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006). *Moore* and *MacInnes* were distinguished, Nancy argued, because the beneficiary designations in those cases were made before the divorce judgments were entered.

Craig responded to Nancy's motion and also moved for summary disposition. Craig asserted that John never intended Nancy to receive a "$120,000 windfall" that would render the estate insolvent. Craig also argued that because John had fully paid the HELOC debt by July 2012, Nancy's receipt of the insurance proceeds could be "fraudulent or wrongful retention" because of her waiver of such benefits in the judgment of divorce. Craig argued that *Moore* and *MacInnes* applied because the insurance policy at issue existed at the time of the divorce judgment.

The trial court denied both parties' motions for summary disposition, and days later, conducted a trial. Three witnesses testified: Mario Pena, a former co-worker of John's, Nancy Henson, and David Henson, Jr. The essence of Pena's testimony was that at the time of the divorce and while the 2010 contempt proceedings were pending, John expressed animosity toward Nancy and feared the contempt proceedings might affect his employment. Pena also testified that the county's human resources department would annually send forms to employees and request that employees update beneficiary designations. Employees were required to sign and return the forms. John did not change his designation. Nancy denied taking enforcement action regarding the insurance provision in the judgment of divorce, stated she never discussed insurance with John, and only learned after his death that John had named her his beneficiary. Nancy offered speculation as to why John not only named her his beneficiary, but also continued to even after he no longer owed her money. Henson testified regarding an alleged statement Craig made that suggested Craig believed Nancy was entitled to the insurance payment, and provided, a post-divorce email from John expressing some kind sentiments toward Nancy.

-3-

At the conclusion of the one-day trial and without permitting oral argument, the court made certain findings of fact. The court rejected Nancy's speculation, found that John and Nancy did not like one another, and found that John's "purpose [in] adding Ms. Henson to the beneficiary form was solely to avoid contempt of court" regarding the divorce judgment. The court then reasoned that once "the [divorce] obligation was extinguished by full payment, that [Nancy] had no other right to the proceeds from the insurance policy."

The probate court entered its order on March 9, 2015. It based its decision on the allegations in the petition regarding MCL 552.101 and the language in the judgment of divorce. The court's order provided that none of the life insurance proceeds would "inure to the benefit of Nancy (Foote) Henson." Rather, the court ordered, the proceeds should be distributed according to the terms of the policy to the first surviving class of beneficiaries, John's children, Craig and Marc Lett.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision to grant or deny a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence, the substance or content of which would be admissible at trial. *Id.* at 120-121; *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The court must view the proffered evidence in the light most favorable to the party opposing the motion. *Maiden*, 461 Mich at 120. A court should grant the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Where undisputed evidence shows one party is entitled to judgment as a matter of law, the court may enter judgment for that party. *In re Baldwin Trust*, 480 Mich 915; 739 NW2d 868 (2007).

Under MCR 2.116(C)(8), summary disposition may be granted on the ground that the opposing party has failed to state a claim on which relief can be granted. *Henry v Dow Chem Co*, 473 Mich 63, 71; 701 NW2d 684 (2005). A motion under this rule tests the legal sufficiency of a claim by the pleadings alone, with factual allegations accepted as true and viewed in a light most favorable to the nonmoving party. *Maiden*, 461 Mich at 119. The motion may be granted only when a claim is so clearly unenforceable no factual development could justify recovery. *Id.*

Issues of statutory interpretation are questions of law reviewed de novo on appeal. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012). And the interpretation of clear contractual language is also an issue of law reviewed de novo on appeal. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## III. DISCUSSION

The only bases Craig alleged to "void" John's post-divorce designation of Nancy as the sole beneficiary of his life insurance policy are the language in the judgment of divorce and

MCL 552.101. But the plain language of MCL 552.101 does not affect John's post-judgment actions, and the plain language of the judgment merely cancelled any interest Nancy may have had in any insurance on John's life at the time the judgment was entered. Because neither the judgment of divorce nor MCL 552.101 prohibited John from naming Nancy as his beneficiary *after* the judgment was entered[1] and because Craig alleged no other basis to void John's beneficiary designation—such as fraud, severe stress, or mutual mistake of fact—the probate court erred by not granting Nancy's motion for summary disposition under MCR 2.116(C)(8). Further, because a motion under this rule tests the legal sufficiency of a claim by the pleadings alone, Craig's argument that discovery was incomplete is unavailing. See *Maiden*, 461 Mich at 119.

The statute at issue in this case, MCL 552.101(2),[2] provides:

> Each judgment of divorce or judgment of separate maintenance shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the husband in which the wife was named or designated as beneficiary, or to which the wife became entitled by assignment or change of beneficiary during the marriage or in anticipation of marriage. If the judgment of divorce or judgment of separate maintenance does not determine the rights of the wife in and to a policy of life insurance, endowment, or annuity, the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates. However, the company issuing the policy shall be discharged of all liability on the policy by payment of its proceeds in accordance with the terms of the policy unless before the payment the company receives written notice, by or on behalf of the insured or the estate of the insured, 1 of the heirs of the insured, or any other person having an interest in the policy, of a claim under the policy and the divorce.

Our Supreme Court reiterated pertinent principles of statutory construction in *Joseph*, 491 Mich at 205-206 (citations omitted):

> Our primary goal when interpreting statutes is to discern the intent of the Legislature. To do so, we focus on the best indicator of that intent, the language of the statute itself. The words used by the Legislature are given their common and ordinary meaning. If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted.

---

[1] *Moore* and *MacInnes*, addressing forgotten pre-divorce beneficiary designations, are clearly distinguished from the present case which unequivocally involves an affirmative post-divorce beneficiary designation. See *Starbuck v City Bank and Trust Co*, 384 Mich 295, 299; 181 NW2d 904 (1970).

[2] A mirror provision regarding the "rights of the husband" is found in MCL 552.101(3).

The plain language of the first sentence of MCL 552.101(2) requires a trial court when granting a judgment of divorce to determine the rights of a wife to the proceeds of any insurance policy on the life of her husband where the "wife was named or designated as beneficiary . . . during the marriage or in anticipation of marriage." This sentence does not void the wife's interest in insurance on the life of her husband; it merely requires the trial court to "determine all rights of the wife." Thus, "MCL 552.101 does not revoke [beneficiary] designations by operation of law but mandates that a trial court's judgment of divorce contain some language that disposes of the parties' rights to such benefits." *Moore*, 266 Mich App at 102. Second, and pertinent to this case, the statute only operates by its plain language on beneficiary designations executed before or during the marriage.

Our Supreme Court discussed this last aspect of the statute's similarly worded precursor in *Starbuck v City Bank and Trust Co*, 384 Mich 295, 299; 181 NW2d 904 (1970):

> The effect of [MCL 552.101], as stated in the title to the statute, in the judgment of divorce, and, in the statute itself, was to affect the interest of the *wife* in the insurance policy and thus cure the situation where a divorced wife could *inadvertently receive* the proceeds of a perhaps forgotten policy. "Inadvertently receive" should be stressed **for the statute does not prohibit the husband or the divorce judgment itself from retaining or renaming the wife as the primary beneficiary**. It simply requires affirmative action on the part of the court or husband to retain the divorced wife as the primary beneficiary and thus eliminate what could be, and usually appears to be, the inadvertent payment of the life insurance proceeds to a divorced wife. [Italics in original; bold added.]

In this case, the judgment of divorce determined each spouse's interest arising from any beneficiary designation executed before entry of the judgment, i.e., before or during the marriage. Specifically, the judgment provided that "all interest of either party hereto, in and to the proceeds of any policy or contract of Life Insurance upon the life of the other, through any employer or otherwise, is hereby canceled." Consequently, the second sentence of MCL 552.101(2) providing that if the judgment "does not determine the rights of the wife in and to a policy of life insurance . . . the policy shall be payable to the estate of the husband or to the named beneficiary if the husband so designates," does not apply. The third sentence of MCL 552.101(2), addressing the potential liability of an insurance company, also does not affect the validity of a post-judgment beneficiary designation. In sum, nothing in MCL 552.101(2) operates to invalidate John's post-judgment beneficiary designation executed on April 6, 2010, approximately eight months after the August 24, 2009 judgment of divorce. The judiciary may not read anything into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 218; 801 NW2d 35 (2011).

The so-called "waiver" in the judgment of divorce also does not prohibit either party from designating the other as the beneficiary of a life insurance policy after the divorce judgment was entered. A settlement to end litigation, here placed on the record and embodied in a judgment of divorce, becomes a contract between the parties. *In re Draves Trust*, 298 Mich App 745, 767; 828 NW2d 83 (2012). "A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract." *MacInnes*, 260 Mich App at 283. The same

legal principles that govern the construction and interpretation of contracts in general govern a settlement agreement in a judgment of divorce. *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010). Settlement contracts in divorce proceedings, like other contracts between consenting adults, are enforced according to the terms to which the parties have agreed. *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006). Thus, a provision in a consent judgment of divorce is a contract that must be interpreted according to the plain and ordinary meaning of its terms; a court may not rewrite clear and unambiguous language of the judgment under the guise of interpretation. *Woodington v Shokoohi*, 288 Mich App 352, 373-374; 792 NW2d 63 (2010). A court "cannot read words into the plain language of a contract." *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013).

In this case, the first paragraph of the section in the divorce judgment that addresses the parties' life insurance merely cancels any then-existing interest of either party to the proceeds of life insurance on the other party. While this provision affected any interest that existed at the time the judgment was entered on August 24, 2009, there is nothing in the plain terms of this provision that prohibits either party from naming the other party as the beneficiary of a life insurance policy after the entry of the judgment of divorce. Nothing may be read into the judgment that is not apparent from its plain terms. *Id.*; *Woodington*, 288 Mich App at 373-374.

Indeed, the second paragraph of the insurance section of the judgment required John to name Nancy as the beneficiary of a "separate life insurance policy" of "an amount not less than $28,500" until John's debt obligations under the judgment were satisfied. Clearly, the divorce judgment not only permitted but also required John to name Nancy as the beneficiary of a life insurance policy after the judgment was entered to at least ensure he fulfilled his obligation. The plain terms of the first provision regarding life insurance must be read together as a whole with the second provision. See *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444, 462; 761 NW2d 846 (2008). Additionally, nothing in the plain terms of the judgment required John to revoke the beneficiary designation after his divorce obligation was satisfied. A court may not read into John's post-judgment beneficiary designation a sunset provision that John did not clearly express or implement. *Northline Excavating*, 302 Mich App at 628; *Woodington*, 288 Mich App at 374. Nor may the court read into John's beneficiary designation its termination by merely concluding that John would have reasonably expected the designation to terminate after he satisfied his divorce debt obligation. *Westfield Ins Co*, 295 Mich App at 615; *Northline Excavating*, 302 Mich App at 628.

The life insurance beneficiary form John signed on April 6, 2010 named Nancy his "Ex-Wife" the "100%" beneficiary of the policy. The beneficiary designation form contains no provision limiting its application and Nancy's proceeds to $28,500, the amount of John's debt obligation under the divorce judgment, nor does it provide that it would terminate when John's debt was satisfied. We find it significant that John did not even provide for a contingent beneficiary. Clearly, he could've easily crafted these terms. Moreover, while John could have revoked Nancy's designation as sole beneficiary after he fully satisfied his divorce obligations in July 2012, and had several opportunities and reminders, and there was no longer any concern about further circuit court enforcement action, he did not do so. This fact must be considered also with the additional facts that he had the time and the opportunity to do so, was described as "careful" and aware of money matters, and received annual reminders about his benefits from his Kent County employer. In sum, Craig's petition does not allege any facts that would support

reforming the clear and unambiguous beneficiary designation on the basis of fraud, severe stress, or mutual mistake. See *Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990) (holding that a party will not be relieved of its contracts "in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act" of the party); *Casey*, 273 Mich App at 398 (while clear and convincing evidence of a mutual mistake of fact will support reformation of a contract, unilateral mistake will not).

Reading the petition in this case in a light most favorable to Craig, we agree John was under the stress of circuit court enforcement action for not making payments on his debt obligation as required by the judgment of divorce when he designated Nancy as his sole beneficiary. There is no allegation, however, that this stress was so severe that it rendered John incapable of understanding in a reasonable manner the nature and effect of his act when naming Nancy his sole life insurance beneficiary of the entire amount of the policy. *Keyser*, 182 Mich App at 269-270. Viewed in a light most favorable to petitioner, we again agree that the stress of enforcement action arising from the debt under the judgment of divorce could have been a motivating factor for John's naming Nancy his beneficiary in 2010. But this stress would have ended after John had satisfied his divorce obligations in 2012. Nor does the stress explain why he did not limit the extent to which Nancy would benefit nor did he name any contingent beneficiaries. The petition itself shows that any stress from possible judgment enforcement would have dissipated when, as alleged in the petition, John paid his debt in full two years before his death.[3] Moreover, the judgment provision requiring John to maintain insurance as security for the debt would also have been inoperative for two years. Thus, stress from possible enforcement action or simply the desire to comply with the judgment of divorce does not account for John's retaining Nancy as his sole beneficiary for an additional two years after his debt was paid and until his death. Consequently, even assuming that John was initially motivated to name Nancy as his sole beneficiary by the terms of the judgment of divorce or stress of judgment enforcement action, we find the petition alleges no factual or legal basis to set aside the clear and unambiguous beneficiary designation that John left in place for two full years after his divorce debt was paid in full. Furthermore, even characterizing John's failure to act as "inertia" and viewing it in the light most favorable to petitioner, one could at best deem it a unilateral mistake of some sort that will not justify granting petitioner relief. *Casey*, 273 Mich App at 398.

In summary, Craig's petition to void John's post-divorce designation of Nancy as his life insurance beneficiary on the basis of the language in the judgment of divorce and MCL 552.101 fails to state a claim for relief. Neither the judgment of divorce nor MCL 552.101 proscribed John's post-judgment action of naming Nancy the 100%-beneficiary of his life insurance. The petition alleges no other basis to void John's beneficiary designation, such as fraud, severe stress, or mutual mistake of fact. Even viewed in a light most favorable to petitioner, the facts show that the alleged stress of judgment enforcement action ended two years before John's death and provide no basis to reform his beneficiary designation. See *Casey*, 273 Mich App at 398;

---

[3] Paragraph 6 of the petition states that John's divorce debt was "paid in full" and refers to Exhibit F, John's hand-written record showing the debt was paid in full on "7/1/12."

*Keyser*, 182 Mich App at 269-270.  Further, because a motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the pleadings alone and is properly granted only when a claim is so clearly unenforceable that no factual development could justify recovery, *Maiden*, 461 Mich at 119, Craig's argument that discovery was incomplete is unavailing.  The trial court erred by not granting Nancy's motion for summary disposition under MCR 2.116(C)(8).

## IV. CONCLUSION

We vacate the probate court's order of March 9, 2015 voiding John's beneficiary designation for the life insurance policy at issue, and we remand this case to the probate court for entry of judgment in favor of respondent on the petition regarding life insurance proceeds.  We do not retain jurisdiction.  As the prevailing party, respondent may tax costs under MCR 7.219.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray