*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YVETTE JONES,

Plaintiff-Appellee,

v

JEFFREY JONES,

Defendant-Appellant.

UNPUBLISHED
December 22, 2022

No. 358184
Macomb Circuit Court
LC No. 18-9299-DO

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order denying his objections to the Friend of the Court referee's recommendations, adopting those recommendations, and granting plaintiff's motion to enforce the parties' consent judgment of divorce respecting payment of the balance of funds owed plaintiff from defendant's 401(k) and award to plaintiff attorney fees. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and defendant married in 1992. In 2018, plaintiff filed for divorce alleging that a breakdown and destruction of the marital relationship occurred with no reasonable likelihood that it could be preserved. Defendant filed a counterclaim for divorce and answered the complaint by agreeing that the marriage relationship should be dissolved with an equitable division of the marital property. Through mediation the parties agreed to settle and defense counsel placed on the record the terms of their settlement. Of relevance to this appeal, the parties agreed to the distribution of the funds in defendant's work-related 401(k), a marital asset. Defense counsel explained that plaintiff and defendant would each receive half of the 401(k) funds. In addition, from defendant's half, plaintiff would receive $80,000 not subject to tax, plus $158,750 of pretax funds that would be subject to taxation, for a total of $238,750. Defense counsel advised the court repeatedly that defendant's 401(k) held $80,000 in after-tax money. He explained further that, in return for payment of the additional money from defendant's share of the 401(k) funds, defendant would be awarded the marital home and have no obligation to pay plaintiff alimony or spousal support. Plaintiff testified confirming the truth of the allegations in her complaint, affirmed that the parties engaged in mediation and came to a settlement, and confirmed the terms of which defense counsel

-1-

advised the court. Plaintiff agreed to the payment of alimony up front without recourse and acknowledged that she would be forever barred and waived any rights to alimony and spousal support. Defendant testified that he waived his right to trial and that the settlement would serve as the judgment. The trial court later entered a consent judgment of divorce that mirrored the settlement placed on the record.

A specialist prepared qualified domestic relations orders (QDROs) for entry by the court as required under the judgment which gave rise to disputes between the parties. Later, plaintiff moved to enforce the judgment, for reimbursement for cost of the QDRO, and for transfer of title to a Jeep to plaintiff. She argued that the judgment entitled her to disbursement from defendant's 401(k) of $80,000 tax free on the basis of defendant's representations. She cited the judgment's provision awarding her half of the 401(k) funds plus an additional $238,750 of which $80,000 consisted of tax-free money and $158,750 subject to taxation. She explained that she had relied on defense counsel's representations to the court when he placed the parties' settlement on the record. Plaintiff asserted that, upon disbursement, she received a check for only $23,211.82 in tax-free money and defendant's employer's controller explained the disbursement which caused her counsel to contact the specialist who advised that defendant would have to pay plaintiff an additional $18,910.66 to make plaintiff whole regarding the $80,000 tax-free amount stated in the judgment. Plaintiff also requested that the court award her attorney fees. Defendant opposed plaintiff's motion on the ground that the judgment stated that the tax-free funds were merely "presumed" to be $80,000, and blamed plaintiff for not confirming the actual amount of pretax dollars that were in defendant's retirement account. He asserted that $80,000 of tax-free funds were unavailable and plaintiff should not be permitted a windfall on the basis of a presumption that proved inaccurate. Further, defendant denied ever agreeing to pay plaintiff $80,000 in tax-free funds because he did not believe that amount existed.

The trial court submitted the matter to a Friend of Court referee who reviewed the transcript of the settlement, the judgment, and the parties' respective arguments, and concluded that the parties agreed that plaintiff would receive $80,000 of after-tax monies from defendant's 401(k) and found that she did not receive the full amount. The referee considered the specialist's analysis that determined that defendant owed plaintiff $18,910.66. The referee recommended that the trial court grant plaintiff's request for enforcement of the judgment and require the parties to comply with its provisions and further recommended that plaintiff's request for attorney fees be preserved and awarded should plaintiff have to return to court. The trial court adopted the referee's recommended order on an interim basis. Defendant objected to the referee's recommendations on the ground that plaintiff sought to impose a tax obligation on defendant based upon a mutual mistake by the parties' attorneys who errantly believed that $80,000 after-tax monies were available in his 401(k), but they never confirmed that such amount existed. Plaintiff opposed defendant's objections because the judgment's terms were based on defendant's representations and no mutual mistake occurred since defendant had repeatedly affirmed to the court a material fact that had been found to be untrue. Plaintiff argued that the court should award her attorney fees for having to seek enforcement of the judgment.

The trial court held a hearing on March 22, 2021, regarding defendant's objections to the referee's recommendations. The trial court confirmed that the 401(k) had been distributed and that plaintiff received $80,000, but of that she only received $23,211 of after-tax money and $56,788.77 that remained subject to taxation. Plaintiff advised the court that the specialist

concluded that plaintiff should receive an additional $18,910.66 because of the taxation of the disbursement to make her whole under the terms of the judgment. The trial court reflected upon defense counsel's representations to the court when he placed the settlement on the record and analyzed the specific terms of the consent judgment of divorce. The trial court concluded that the parties intended that plaintiff get a lump sum of $80,000 tax free. The trial court next reviewed the referee's recommended order. The court found that the referee properly discerned the terms of the judgment and appropriately understood the transcript of the settlement hearing. The court did not agree with defendant's characterization of the term "presumption" as used in the judgment in reference to the $80,000. The court explained that defense counsel repeated multiple times the terms of the settlement respecting the $80,000 tax free to plaintiff. The court, therefore, adopted the referee's recommendation. The court also stated that it would award plaintiff attorney fees because defendant did not comply with the judgment.

Plaintiff prepared and submitted a proposed order to which defendant objected requiring the court's intervention to settle the order. The trial court's order in relevant part denied defendant's objections to the referee's recommendation and affirmed and adopted the recommendation, granted plaintiff's request for the balance of the retirement funds owed under the judgment and QDRO in the amount of $18,910.66 to be paid by defendant within 30 days of entry of the order. The order reflected that plaintiff acknowledged receipt of $5,500 in payment of her attorney fees. On September 1, 2021, the trial court entered a stipulated order that stated that defendant satisfied his $18,910.66 obligation by making two payments, one to a credit union in the amount of $11,332.26 to pay off the balance owed on the Jeep awarded to plaintiff under the judgment, and the other payment of $7,578.40 by check to plaintiff. Defendant now appeals.

## II. STANDARDS OF REVIEW

To the extent this appeal "involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Johnson v USA Underwriters*, 328 Mich App 223, 233; 936 NW2d 834 (2019). "A divorce judgment entered upon the settlement of the parties . . . represents a contract, which, if unambiguous, is to be interpreted as a question of law." *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008) (quotation marks and citation omitted; alteration in original). The trial court's findings concerning the validity of the parties' consent to a settlement will not be overturned absent an abuse of discretion. *Keyser v Keyser*, 182 Mich App 268, 270; 451 NW2d 587 (1990). The abuse of discretion standard recognizes that there may be more than one reasonable and principled outcome, and the court only abuses its discretion if its decision falls outside that range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review de novo property settlements in divorce cases. *Ackerman v Ackerman*, 163 Mich App 796, 807; 414 NW2d 919 (1987). However, we will not substitute our judgment for that of the trial court unless there has been an abuse of discretion. *Id.*

Whether the trial court properly conducted a hearing de novo following defendant's objections to the referee's recommendation depends on the interpretation of MCL 552.507 which is a question of law that we review de novo. See *Cochrane v Brown*, 234 Mich App 129, 131; 592 NW2d 123 (1999). We review a trial court's factual findings for clear error. *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017). "A finding is clearly erroneous if, after a review of the record, we are left with a definite and firm conviction that the trial court made a mistake." *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019). We also review for an abuse of

discretion a trial court's grant or denial of attorney fees. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error; questions of law are reviewed de novo." *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007).

## III. ANALYSIS

Defendant contends that the trial court erred by affirming and adopting the referee's recommendation and awarding plaintiff attorney fees. We disagree.

The record indicates that plaintiff moved for enforcement of the consent judgment of divorce on the ground that defendant failed to pay her $80,000 tax free as provided under the judgment. Defendant opposed the motion on the grounds that the judgment presumed the tax-free amount which turned out to be a mistake, and he denied that he ever agreed to pay plaintiff $80,000 tax free because he did not believe that amount existed and no one bothered to confirm the amount. The trial court referred the motion to a referee as permitted under MCL 552.507(2)(a). The referee decided the motion in plaintiff's favor and issued a recommended order which the trial court adopted on an interim basis. Defendant objected to the referee's recommendations and the trial court held a hearing on the matter as provided under MCL 552.507(4), (5), and (6).[1] A trial court may ultimately arrive at a new decision "based entirely on the record of a previous hearing, including any memoranda, recommendations, or proposed orders by the referee," MCL 552.507(6)(a), but the court must allow the parties to present live evidence, subject to the restrictions permitted by MCR 3.215(F)(2). MCL 552.507(5)(b); see *Dumm v Brodbeck*, 276 Mich App 460, 465; 740 NW2d 751 (2007) (indicating that the trial court is permitted to consider the Friend of the Court report or recommendation "if it also allows the parties to present live evidence"). In this case, the trial court properly analyzed defendant's objections to the referee's recommendations respecting plaintiff's motion to enforce the judgment and determined that his objections lacked merit. The trial court, therefore, did not err by affirming and adopting the referee's recommendations.

Defendant's arguments regarding the terms of the consent judgment of divorce lack merit. "A consent judgment is in the nature of a contract, and is to be construed and applied as such." *Lueck*, 328 Mich App at 404 (quotation marks and citations omitted); see also *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). "[A] court may not rewrite clear and unambiguous language under the guise of interpretation," nor may a court "read words into the plain language of a contract." *In re Lett Estate*, 314 Mich App 587, 600; 887 NW2d 807 (2016) (quotation marks and citations omitted). Absent a finding of fraud, mutual mistake, or duress, the court must uphold divorce property settlements reached through negotiation and agreement of the parties. *In re Estate of Lobaina*, 267 Mich App 415, 418; 705 NW2d 34 (2005); *Andrusz*, 320 Mich App at 453; *Vittiglio v Vittiglio*, 297 Mich App 391, 399; 824 NW2d 591 (2012). This is because an unambiguous contract, such as a property settlement agreement, must be enforced according to its terms. *Lueck*, 328 Mich App at 404. A provision of a consent judgment of divorce is only

---

[1] Similarly, the court rules provide that "[a] party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order ...." MCR 3.215(E)(4).

ambiguous if the provision irreconcilably conflicts with other provisions contained therein or could be reasonably understood as meaning different things. *Andrusz*, 320 Mich App at 453. In the event of an ambiguity, courts may consider extrinsic evidence to resolve the ambiguity in a way that maintains the parties' intent. *Id.*

In this case, the parties negotiated a settlement, the terms of which defense counsel placed on the record. Defense counsel repeatedly explained that plaintiff would receive half of defendant's 401(k), plus an additional $80,000 tax free and $158,750 subject to taxation. In return for the money beyond her one-half marital interest, plaintiff agreed that defendant would receive the marital home, and plaintiff would waive any claim to alimony and spousal support. The record reflects that these specific terms represented the parties' bargained-for exchange. Plaintiff assented to those terms on the record and defendant affirmed them on the record without objection. No conditions precedent or reservations were stated on the record, nor did defense counsel or defendant state anything that made plaintiff's receipt of $80,000 tax free contingent.

Having reached a valid agreement, the parties had the responsibility to "take steps necessary to enter judgment as in the case of other settlements." MCR 3.216(H)(8). The terms of the parties' settlement were memorialized in a consent judgment of divorce that the trial court entered on October 22, 2019. The judgment provided, in relevant part, the following:

> The Defendant has a 401(k) through Roseville Chrysler Jeep with an approximate balance of $550,000 and this amount is all marital.
>
> * * *
>
> The 401(k) shall be equally divided by a Qualified Domestic Relations Order. From Defendant's share of the 401(k), Plaintiff shall be awarded an additional $238,750, which represents $80,000 of tax free money which [sic] and an additional $158,750 of tax-effected lump sum payout of spousal support, Plaintiff's share of equity in the marital home, contribution towards attorney fees and miscellaneous financial considerations. This amount is also based on the presumption that the first $80,000 of the 401(k) is tax-free, and hence this number was not tax-effected.
>
> * * *
>
> This transfer shall be effectuated by means of a Qualified Domestic Relations Order prepared in accordance with approval of the Plan Administrator and entered with the Court, dividing said Plan. The cost of preparations for the appropriate order shall be paid equally by the parties. Each party shall be responsible for any tax ramification of the portion of the Plan awarded to him/her. Each party shall be awarded the balance of his or her account. Each party will receive any future increase in said accounts on their portion subsequent to the date of entry of the Judgment of Divorce.
>
> * * *

The property awarded in this judgment is based on each party's warranty that any property being transferred to the other party is free of liens, encumbrances, or debts other than those specifically disclosed.

\* \* \*

The parties understand that they may incur certain tax liabilities associated with the division of marital assets and liabilities contained in this Judgment. The parties are advised, through this Judgment, that the attorneys for the parties are not tax specialists, and each party should consult their own tax advisor regarding any and all tax implications associated with the division of marital assets and liabilities herein.

The consent judgment lacks ambiguity. Its language plainly provides that defendant's 401(k), a marital asset, would first be divided equally. Additionally, in exchange for plaintiff's equity in the marital home, and instead of defendant paying spousal support, from defendant's one-half share of the 401(k) funds, plaintiff would receive $80,000 tax free plus an additional $158,750 subject to taxation, as a lump sum payout of spousal support. There are no conflicting provisions and no confusion in the plain language of the judgment that plaintiff would receive $80,000 tax free.

Defendant contends that the parties merely presumed that the 401(k) held $80,000 that could be distributed tax free, but because the presumption proved false, plaintiff could only receive whatever amount was tax free with the balance subject to taxation. In essence, defendant takes the position that the express provision for payment of $80,000 tax free would become a nullity and plaintiff would receive payment but bear the burden of taxation. The judgment, however, does not provide such an illusory contingency. Nor does the record support defendant's argument. The trial court conducted de novo review of the evidence, including the settlement placed on the record and its memorialization in the judgment entered by the court. The trial court correctly rejected defendant's argument that his promise to pay $80,000 tax free could be avoided.

Alternatively, defendant argues that the parties suffered from a mutual mistake of fact which again required plaintiff to bear the burden of taxation on the distribution of funds from defendant's 401(k). This argument also lacks merit.

A mutual mistake is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Kaftan v Kaftan*, 300 Mich App 661, 665-666; 834 NW2d 657 (2013), quoting *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). The record in this case does not support a finding that the parties made a mutual mistake. Rather, the record indicates that, at best, defendant made a unilateral mistake regarding the amount of after-tax money held in his 401(k). Moreover, defendant sat idly while negotiating the settlement and when his counsel repeatedly represented to the trial court that defendant would pay plaintiff $80,000 free from taxation. The record reflects that plaintiff relied on defendant's and his counsel's representations regarding the receipt of $80,000 tax free, which constituted a material term of the parties' bargained-for exchange. Defendant apparently failed to inform himself of the true nature of the funds held in his 401(k), and he made an offer on the basis

of his unilateral mistaken belief regarding those funds which plaintiff accepted.[2] This "Court does not consider a unilateral mistake sufficient to modify a previously negotiated agreement." *Hilley v Hilley*, 140 Mich App 581, 585-586; 364 NW2d 750 (1985); see also *Farm Bureau Mut Ins Co of Michigan v Buckallew*, 471 Mich 940; 690 NW2d 93 (2004) (explaining that a party cannot evade payment of a settlement based on that party's unilateral mistake where the party had access to all the necessary information but carelessly failed to perform due diligence). Further, "[o]nce a contract to settle legal claims has been entered into, a unilateral change of mind is not a ground for excusing performance." *Reed v Citizens Ins Co of America*, 198 Mich App 443, 447; 499 NW2d 22 (1993), overruled on other grounds in *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 540; 697 NW2d 895 (2005). The record does not support defendant's contention that the parties made a mutual mistake that should have relieved him of his obligation to pay plaintiff $80,000 tax free. The trial court, therefore, did not err by concluding that the parties were not mutually mistaken. Further, the trial court correctly awarded plaintiff $18,910.66 that defendant owed her under the judgment.

Defendant also argues that the trial court's award of attorney fees to plaintiff should be reversed. We disagree.

Attorney fees generally are not recoverable in a divorce action unless the fees are expressly allowed by statute, court rule, or common-law exception. *Reed*, 265 Mich App at 164. However, where a divorce judgment provides for the award of attorney fees, such provisions are contractual and enforceable.

In this case, ¶ 20 of the judgment provided:

*Enforcement of Judgment*. In the event, any of the terms contained in this agreement are not complied with by either party, and the other party must seek enforcement by the court, then the party not in compliance shall be liable for costs, sanctions, and attorney fees.

Defendant's refusal to pay the amount he contractually promised to pay plaintiff forced her to move for enforcement of the consent judgment of divorce. Under the terms of the judgment, because defendant failed to comply with the judgment and plaintiff had to seek enforcement by the court, defendant became liable for costs, sanctions, and attorney fees. The trial court, therefore, did not err in ordering defendant to pay plaintiff's reasonable attorney fees as required under the terms of the judgment.

---

[2] If, as defendant argued to the trial court, he never believed that his 401(k) held $80,000 tax free, the record reflects that he sat silent the entire time his counsel represented repeatedly to the court that defendant would pay plaintiff $80,000 tax free. His silence under such circumstances permitted the court's authorization of the parties' settlement and entry of a judgment containing a material misrepresentation of fact known by him but left unsaid. Such conduct could be construed as perpetration of a fraud on plaintiff and the court. The trial court, however, did not address the issue and chose to enforce the unambiguous judgment.

Further, MCR 3.206(D) provides in relevant part as follows regarding awarding a party attorney fees and costs:

(1)  A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2)  A party who requests attorney fees and expenses must allege facts sufficient to show that

(a)  the party is unable to bear the expense of the action, and that the other party is able to pay, or

(b)  the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

This Court has interpreted this rule and applied it to domestic relations cases as follows:

It is within the discretion of the trial court to award attorney fees in domestic relations cases.  A party to a divorce action may be ordered to pay the other party's reasonable attorney fees if the record supports a finding that such financial assistance is necessary to enable the other party to defend or prosecute the action.  An award of legal fees is also authorized where the party requesting the fees has been forced to incur them as a result of the other party's unreasonable conduct.  The party requesting the attorney fees has the burden of showing facts sufficient to justify the award.  [*Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007) (quotation marks and citations omitted); see also *Reed*, 265 Mich App at 165 (explaining that a common-law exception provides that an award of attorney fees is authorized if the party requesting the fees was forced to incur them because of the adverse party's misconduct).]

The record reflects that plaintiff established that defendant failed to comply with the terms in the consent judgment of divorce.  Under MCR 3.206(D), the trial court could also properly award plaintiff reasonable attorney fees incurred because defendant refused to comply with the judgment.  Accordingly, the trial court did not abuse its discretion by adopting the referee's recommendations ordering the enforcement of the judgment and awarding plaintiff attorney fees.

Affirmed.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford